UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHELLE SANDERS                                                              PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:17CV-245-CRS

PRINT FULFILLMENT SERVICES, LLC                                               DEFENDANT

# MEMORANDUM OPINION

The above-styled action was removed to this court under our diversity jurisdiction. The matter is before the court on motion of the plaintiff, Michelle Sanders ("Sanders"), to remand the action to the Jefferson County, Kentucky, Circuit Court. The complaint alleges that Sanders, an African American female, worked for Print Fulfillment Services, LLC ("PFS"). While the complaint does not allege the duration of her employment, PFS states that she was employed for approximately two and one half years and was terminated on March 10, 2017. Sanders alleges that during her employment, she was "treated less favorably than non-African-American employees." She alleges that she complained about this treatment and that thereafter PFS retaliated against her, terminating her employment. DN 1-1. Sanders alleges that PFS is a Kentucky corporation doing business in Louisville, Kentucky, that the events giving rise to the causes of action occurred in Jefferson County, Kentucky, and that the amount in controversy in this case exceeds the jurisdictional minimum of the Jefferson County, Kentucky, Circuit Court. *Id.* As Kentucky does not permit it, there is no amount in controversy alleged in the complaint.

In considering Sanders' motion to remand, the court must consider (1) whether PFS has shown by a preponderance of the evidence that the amount in controversy is satisfied,

considering the damages alleged at the time of removal, and (2) whether Sanders' post-removal stipulation vitiates the amount in controversy finding. *See Agri-Power, Inc. v. Majestic JC, LLC,* No. 13CV-46-TBR, 2013 WL 3280244 (W.D.Ky. June 27, 2013).

As noted in *Agri-Power, Inc., supra.,* at *2-3,

> As amended, § 1446 permits a defendant to assert the amount in controversy in its notice of removal if removing from a jurisdiction where "State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." § 1446(c)(2)(A)(ii). Removal from such a jurisdiction is proper upon the defendant's assertion of the amount in controversy "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." § 1446(c)(2)(B). These recently enacted congressional amendments are applicable in the present case because Kentucky both prohibits the demand for a specific sum and allows recovery beyond that demanded in the pleadings. *See* Ky.R.Civ.P. 8.01(2), 54.03(2). Therefore, the first issue that must be addressed is whether the Defendants have shown that it is more likely than not that the amount in controversy exceeds $75,000...In regard to the second issue at hand...this court has recognized that a plaintiff may stipulate that it neither seeks, nor will accept, damages in an amount greater than $75,000, and that such a stipulation will destroy the amount-in-controversy requirement for § 1332 jurisdiction. *ee, e.g., Spence v. Centerplate*, ___F.Supp.2d ___, 2013 WL 1163991, at *2 (W.D.Ky. Mar. 21, 2013). Still, "only where that clarifying stipulation is unequivocal will it limit the amount of recoverable damages and warrant remand." *Proctor*, 2013 WL 4593409, at *3 (*citing Egan v. Premier Scales & Sys.*, 237 F.Supp.2d 774, 778 (W.D.Ky. 2012).

In support of removal, PFS offers a computation of damages, concluding that such damages exceeded the sum of $75,000.00 at the time of removal. The court finds the calculation unusual in that it is apparently based upon only one known fact – that Sanders was paid an hourly wage of $13.46 per hour for an average of 31.14 hours per week. DN 1-2.[1] In the complaint, Sanders states only that the acts of PFS constituted race discrimination and unlawful retaliation, as she was "treated less favorably than her non-African-American counterparts" and,

---

[1] In PFS' Notice of Removal, it states that "[a]lthough Plaintiff's hourly rate varied, over the one-hundred sixteen (116) weeks that she performed work at Print Fulfillment, her average rate of pay was $13.46 per hour…," citing to the Affidavit of Paul Barnum at ¶ 4. DN 1, ¶ 13. Nowhere in that affidavit or in Sanders' complaint is there any reference to a start date or the length of time she worked for PFS. While the duration of her employment is not pivotal to any issue presently before the court, we note that this fact does not appear anywhere in the record besides in a statement offered by counsel in the Notice of Removal.

after "object[ing]" to this "different treatment," she was terminated. DN 1-1, ¶ 8. Sanders' prayer for relief includes past and future lost wages, damages for emotional distress, mental anguish, and humiliation and embarrassment, punitive damages, and statutory attorney fees. DN 1-1, V. Prayer for Relief. There are no facts to suggest the nature of the purported different treatment to which she was allegedly subjected – failure to promote? Hostile work environment? - there is nothing to be gleaned from the face of this complaint concerning Sanders' claims. As such, there is nothing from which the defendant can reasonably identify an amount in controversy in this case.

In an effort to establish that the case was properly removeable on this barren complaint, PFS turns to generalizations and math calculations. First, it notes that "courts in this district have consistently held that the nature and scope of Plaintiff's requested relief likely exceeds the amount in controversy requirement." DN 7, p. 5. The plaintiff states generally that demands in race discrimination cases, often including front and back pay, emotional distress and punitive damage claims, "can easily exceed the threshold amount of $75,000.00," quoting *Egan v. Premier Scales & Systems*, 237 F.Supp.2d 774, 776 (W.D.Ky. 2002). *Egan*, in turn, cites *McCraw v. Lyons*, 863 F.Supp. 430 (W.D.Ky. 1994), an opinion which has recently been questioned. *See, Warren v. Sheba Logistics, LLC*, 2016 WL 1057322 (W.D.Ky. March 14, 2016). This court, too, disagrees with the holding in *McGraw*, and those cases which give weight to this generality in analyzing the amount in controversy. The defendant must establish that, at the time of removal, it was more likely than not that the amount in controversy *in this case* exceeded the sum of $75,000.00.

PFS next ventures into averages and math equations, citing *Proctor v. Swifty Oil Co., Inc.*, 2012 WL 4593409 at * (W.D.Ky. Oct. 1, 2012) for the proposition that we should assume

3

that this case will take about 18 months until trial. Therefore, defendant urges, based upon the sole fact that Sanders was paid $13.46 per hour for an average of 31.14 hours per week, it is reasonable to multiply this sum for 18 months to reach an estimate of a back pay award. It then further assumes that plaintiff would claim one year of front pay. Again, this is not based upon any evidence in *this* case. PFS assumes that plaintiff will seek attorney fees at a rate of $200/hour and assumes the counsel will expend 200 hours over twelve to eighteen months in taking the case to trial. Thus it concludes that "by any realistic measure, the reasonable value of Plaintiff's claims certainly exceeded $75,000, exclusive of interest and costs, at the time of removal." DN 7, p. 5. The court rejects this conclusion as PFS' calculations are based on sheer speculation.

As noted in *Warren*, "While preponderance of the evidence is not a daunting burden, the standard still requires *evidence*…The Complaint itself makes allegations…which are routinely asserted in complaints…Bare allegations…do not, by themselves, establish a case is removable…It is improper to place the burden on a defendant to guess at the extent of the compensation claimed by a plaintiff in the hope that later discovery may prove the defendant right, and to penalize that defendant when it guesses wrong." 2016 WL 1057322 at *2, *citing King v. Household Finance Corporation II*, 593 F.Supp.2d 958 (E.D.Ky. 2009). In *King*, the court stated that claims for compensatory damages, punitive damages, and attorney fees were "nothing more than mere averments" that were "not supported by any actual evidence bearing on the issue of the amount in controversy." *Id.* at 960. The court concluded that the defendants produced no evidence to support their assertions that the amount-in-controversy requirement was satisfied. The court concluded that, "[a]s a result, their assertions are nothing more than pure speculation, which is obviously not enough to permit this Court to find that the defendants have

established the amount-in-controversy requirement by a preponderance of the evidence." *Id*. In declining to take the "fair reading" requirement into the land of speculation, as suggested by *McCraw* and *Egan*,[2] the court explained

> Such evidence [of the amount in controversy] is not hard to obtain. For example, as the Court has said before, such evidence can be acquired through pre-removal interrogatories. *See, e.g., Marcum v. State Farm Mut. Auto Ins. Co.*, No. 6:07-269-DCR, 2007 WL 2461623, at *3 (E.D.Ky. Aug. 22, 2007). It can also be acquired through pre-removal requests for admissions. Defendants often argue that requiring them to engage in discovery with respect to the amount in controversy places them in a Catch-22 because they cannot possibly conduct discovery in time to comply with the 30-day removal deadline. This argument, however, ignores a key portion of the removal statute. If a case is not removable based solely on the information contained in the complaint, the 30-day deadline runs from the date on which the case becomes removable, not the date on which the defendant was served. *See* 28 U.S.C. § 1446(b). Thus, when a complaint fails to allege the amount in controversy, the defendant will have ample opportunity to engage in the appropriate discovery because the 30-day removal deadline will not start to run until the defendant receives discovery responses showing that the amount in controversy exceeds the jurisdictional amount. [citations omitted].

*Id.* at 960, n. 2. For these reasons, we conclude that the matter must be remanded for failure of PFS to establish that removal was proper.

Further, Sanders has filed a stipulation, through counsel, accompanying her motion for remand that

> The amount in controversy in this matter, including back pay, front pay, compensatory damages, punitive damages, and attorney's fees sought by Plaintiff, does not exceed the sum or value of $75,000.00 exclusive of interest and costs and will not exceed the sum or value of $75,000.00, exclusive of interest and costs, at any time up to and including trial and any subsequent appeals;
>
> Plaintiff will not seek a judgment or request a verdict for an amount in excess of $75,000.00 and will not seek attorney's fees for any amount that, together with any judgment or verdict, would exceed $75,000; and
>
> Any judgment for money damages entered in this matter in favor of Plaintiff for

---

[2] And even more recently in the unpublished opinion of *Jefferson v. Hyatt Corp. of Delaware*, No. 3:14-CV-601-TBR, 2015 WL 1611834 (W.D.Ky. April 9, 2015) which appears to have provided the defendants a roadmap for PFS' Notice of Removal in this case.

> back pay, front pay, compensatory damages, and punitive damages will not exceed the sum or value of $75,000.00, exclusive of interest and costs. If a judgment is rendered awarding Plaintiff a sum in excess of this amount, Plaintiff will not seek to enforce or collect, and will not be entitled to enforce or collect, any such award in excess of $75,000.00.

DN 5-1.

The language of this stipulation comports with *Martin v. UPS Supply Chain Solutions*, Civil Action No. 3:14-CV-00342-TBR, 2015 WL 691557 (W.D.Ky. Feb. 18, 2015), *Agri-Power, Inc., supra.,* and cases cited therein holding that such a stipulation satisfies the requirement that the plaintiff's stipulation be clear and unequivocal. See also *Agri-Power* at *4, *quoting Standard Fire Ins. Co. v. Knowles,* 133 S.Ct. 1345, 1348 (2013)("'[s]tipulations must be binding' because they amount to an 'express waiver made...by the party or his attorney conceding for purposes of the trial the truth of some alleged fact.'").

PFS expresses concern that the unsworn stipulation may not be watertight in state court. The stipulation states that (1) The amount in controversy does not and will not exceed the sum or value of $75,000; (2) The plaintiff will not seek a judgment which will exceed $75,000; (3) Any judgment will not exceed the sum or value of $75,000; (4) If a judgment exceeding $75,000 is entered, the plaintiff will not seek to enforce or collect and will not be entitled to enforce or collect any award in excess of $75,000. DN 5-1. That pretty much covers it. We reiterate what we have stated in similar cases. While an unscrupulous party might seek to abuse the process, this court is placing absolute reliance upon counsel's statement limiting damages as an essential component of our order of remand. The case was removed to this court despite the fact that the complaint not only lacked any monetary demand, but also was devoid of any facts from which an amount in controversy might be gleaned. Thus there is no post-removal manipulation by the plaintiff of the amount in controversy. Rather, the stipulation clarifies that plaintiff stipulates

that it is bound by this sum on remand. While the court has no doubt as to the unequivocal statement of the plaintiff, we note that any attempt to void the commitment will be considered to be sanctionable conduct and may justify re-removal.  *See, VanEtten v. Boston Scientific*, 2009 WL 3485909, *2 (W.D.Ky. Oct. 23, 2009); *Hoop v. Wal-Mart East, L.P.*, Civil No. 13-115-GFVT, 2014 WL 1338704 (E.D.Ky. Mar. 31, 2014).  The motion to remand will therefore be granted.

A separate order will be entered this date in accordance with this opinion.

June 16, 2017

**IT IS SO ORDERED.**

**Charles R. Simpson III, Senior Judge
United States District Court**